# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1274
_____

United States of America

*Plaintiff - Appellee*

v.

Katie Louise Boll

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo
_____

Submitted: January 15, 2021
Filed: July 8, 2021
_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

While working as a hospice nurse, Katie Boll stole opioids and other pain medications from 14 patients. Is 14 a "large number"? U.S.S.G. § 3A1.1(b)(2)(B).

The district court[1] said yes when it gave her a two-level enhancement for an "offense involv[ing] a large number of vulnerable victims." *Id.* We affirm.

## I.

One of Boll's responsibilities was to make sure that her patients received their pain medications. Instead, she decided to feed her drug addiction. Sometimes, she would just take the medications set aside for her patients. Other times, she would get extra and help herself to it. For particularly strong opioids like morphine, she would keep most of it and dilute what remained. In total, she tampered with or stole the pain medications of 14 patients.

When Boll's drug-pilfering scheme was discovered and she was confronted about it, she immediately confessed and expressed remorse. She later pleaded guilty to two of the 14 counts in the indictment. *See* 18 U.S.C. § 1365(a) (tampering with a consumer product); 21 U.S.C. § 843(a)(3) (acquiring controlled substances by misrepresentation, fraud, forgery, deception, or subterfuge). Although she agreed to an enhancement for exploiting "vulnerable victim[s]," U.S.S.G. § 3A1.1(b)(1), the parties could not agree on whether 14 was a "large number," *id.* § 3A1.1(b)(2)(B), which left an additional two-level enhancement in limbo.

The district court resolved the issue. It explained why, in its view, 14 was a "large number":

> the defendant [was] hands-on with these patients, [she was] in the position to make the decision about what these patients [were] going to receive and in the context of a facility with . . . 97 potential victims, for her to [have made] the decision to either adulterate or not provide pain medication to 14 of those patients, under these contexts, I find [it] to be

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

a large number. Again, I wouldn't necessarily find more than 10 to be a large number in other contexts with other types of crimes, but with this type of crime, with the defendant's hands-on conduct with the individual patients, I find that more than 10, and particularly in this case, 14 patients, is a large number.

The sole issue on appeal is whether 14 is indeed a "large number." *Id.*

## II.

We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. *See United States v. Hackman*, 630 F.3d 1078, 1081–82 (8th Cir. 2011). Figuring out whether 14 is a "large number" involves both interpretation and application. U.S.S.G. § 3A1.1(b)(2)(B).

## A.

We start with interpretation. When an offense involves "vulnerable victims," there are two enhancements available. *Id.* § 3A1.1(b). The first is a two-level enhancement when "the defendant knew or should have known that a victim of the offense" was vulnerable. *Id.* § 3A1.1(b)(1). The second tacks on two more levels when there were "a large number of vulnerable victims." *Id.* § 3A1.1(b)(2). The Sentencing Guidelines define "vulnerable victim," *id.* § 3A1.1 cmt. n.2, but not "large number." *See United States v. Anderson*, 349 F.3d 568, 573 (8th Cir. 2003) (observing that the phrase "large number" as used in section 3A1.1(b)(2) of the Guidelines is "largely uninterpreted").

Two possibilities exist. One is that "large" is relative, which is how the district court understood it. As one dictionary puts it, "large" can mean "exceeding most *other things of like kind* in . . . quantity." *Webster's Third New International Dictionary* 1272 (2002) (emphasis added); *see also Wis. Cent. Ltd. v. United States*,

138 S. Ct. 2067, 2070–71 (2018) (explaining that we "interpret . . . words consistent with their ordinary meaning," and using dictionary definitions to aid in this task (internal quotation marks omitted)).  The idea is that ten people might be a "large number" for a dinner party, but not for a rock concert.  Likewise, ten could be a "large number" of victims for a murder spree, but not for a telemarketing scheme.

The other possibility is that "large" is absolute.  As the same dictionary says, "large" can also mean "dealing in great numbers or quantities," which suggests that no comparison is necessary.  *Webster's Third*, *supra*, at 1272.  The notion is that a number becomes large once it surpasses some specific cutoff.  The cutoff may be 10, 100, or 1,000, but it is always the same, regardless of the crime.

Although both meanings are common, the Sentencing Guidelines leave us a few clues about which usage is at play here.  *See Hackman*, 630 F.3d at 1083 ("We employ basic rules of statutory construction when interpreting the Guidelines . . . .").  Elsewhere, when setting crime-specific enhancements or departures, the Guidelines provide rigid cutoffs.  *See Smith v. United States*, 508 U.S. 223, 235–36 (1993) (interpreting the phrase "uses . . . a firearm" by comparing it to other provisions that refer to firearms "involved in" an offense).  For crimes involving slavery or involuntary servitude, for example, having "more than ten victims" makes a defendant eligible for an upward departure.  U.S.S.G. § 2H4.1, cmt. n.3.  For fraud crimes, "substantial financial hardship to five or more victims" is enough to trigger an enhancement.  *Id.* § 2B1.1(b)(2)(B).  The point is that, when the Sentencing Commission settles on a fixed number, it says so.  It does not use the type of open-ended language we have here.  *Cf. Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").  The better interpretation, in other words, is that the word "large" is used in its relative, context-specific sense.

We now know that context matters, but what circumstances are fair game to consider? Fortunately, the text itself provides an answer. Recall that the enhancement applies only when "the *offense* involved a large number of vulnerable victims." U.S.S.G. § 3A1.1(b)(2)(B) (emphasis added). By "offense," the Sentencing Guidelines mean both "the offense of conviction and all relevant conduct." *Id.* § 1B1.1 cmt. n.1(I); *see id.* § 1B1.3(a) (defining "relevant conduct" to include "all acts and omissions . . . willfully caused by the defendant . . . that occurred during the commission of the offense of conviction" and "all harm that resulted"). So putting all the pieces together, the enhancement applies when, taking into account the defendant's "offense of conviction and all relevant conduct," the number of vulnerable victims exceeds the typical number involved in offenses of like kind. *Id.* § 1B1.1 cmt. n.1(I); *see id.* § 3A1.1(b)(2). *But cf. United States v. Mooty*, 25 F. App'x 501 (8th Cir. 2002) (unpublished per curiam) (concluding, without analysis, that "seven is not, as a matter of law, a 'large number' within the meaning of section 3A1.1(b)(2)"); *United States v. Kentz*, 251 F.3d 835, 843 (9th Cir. 2001) (rejecting the idea that the large-number enhancement should only be applied to a telemarketing offense when the number of vulnerable victims was "larger than the average telemarketing fraud").

B.

Now we move on to application. The district court concluded that "with this type of crime," meaning one involving tampering with a consumer product and acquiring a controlled substance by misrepresentation, fraud, deception, or subterfuge, "14 . . . [was] a large number." Among other things, it emphasized Boll's "hands-on conduct" and the fact that she had a special responsibility as a nurse to give her patients the pain medication they needed.

Taking into account the "relevant conduct" that the district court identified, U.S.S.G. § 1B1.1 cmt. n.1(I), we agree with its conclusion that 14 was "a large number of vulnerable victims," *id.* § 3A1.1(b)(2)(B). Even if, as it recognized, 14

-5-

"may not be a 'large number'" in other circumstances, such as when an offense involves only "indirect contact" or is committed in a completely different "way," *this* crime exceeded the number of vulnerable victims typically found in offenses of like kind.

## III.

We accordingly affirm the judgment of the district court.

_____